# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| LESTER ADAMS, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No.    23-2012 |
| | ) | |
| vs. | ) | |
| | ) | |
| CARRIER MANAGEMENT | ) | |
| CORPORATION d/b/a MATTHEWS | ) | |
| BUS COMPANY, | ) | |
| | ) | |
| *Defendant*. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Lester Adams (hereinafter, "Plaintiff"), by and through the undersigned counsel, now files the within Complaint in Civil Action against Defendant, Carrier Management Corporation, doing business as Mathews Bus Company (hereinafter, "Defendant"), averring as follows:

## PARTIES

1.      Plaintiff is an adult individual who resides at 257 Fairview Road, Midland, Pennsylvania 15059.

2.      Defendant is a transportation firm and company that is headquartered at 2601 Navistar Drive, Lisle, Illinois 60532.  Further, Defendant is a domestic business corporation which utilizes a commercial registered agent of CT Corporation System, located in Dauphin County, Pennsylvania.  Pertinent here, Defendant has business operations located at 1112 1st Street, Jefferson Hills, Pennsylvania 15025 (hereinafter, the "Facility").

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, (hereinafter, the "FLSA").

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff alleges violations of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.*, (hereinafter, the "MWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (hereinafter, the "WPCL"), and asserts Pennsylvania state common law claims for breach of contract and unjust enrichment. Ultimately, as explained more thoroughly below, the factual basis for the Pennsylvania statutory and common law claims are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is also proper in this Court because a substantial part of the events or omissions giving rise to the claims averred herein occurred in the Township of Mount Lebanon and/or City of Pittsburgh, Allegheny County, both of which are located within the geographical confines of the United States District Court for the Western District of Pennsylvania. Therefore, venue is appropriate pursuant to 28 U.S.C. § 1391(b).

6.      This Court has personal jurisdiction over Defendant because Defendant routinely and regularly conducts business in the Commonwealth of Pennsylvania and routinely and regularly solicits business in Pennsylvania. Further, as averred more fully below, Defendant violated numerous statutory provisions of federal law, Pennsylvania law, and Pennsylvania common law, and all the events giving rise to its unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania. As such, this Court, at bare minimum, may exercise personal

jurisdiction over Defendant because it has the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute and the Due Process Clause of the United States Constitution.

7.     This Court may therefore properly maintain personal jurisdiction over Defendant in light of its extensive conduct within Pennsylvania and this judicial district in particular, and the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice.

## GENERAL ALLEGATIONS

8.     On December 20, 2021, Plaintiff commenced his employment with Defendant as a "Maintenance Manager."   In that capacity, Plaintiff provided general oversight over the maintenance department of the Facility, ensuring that operations ran smoothly and efficiently, work orders were properly processed, transportation vehicular parts were ordered and replaced, and transportation vehicles were timely and effectively serviced.

9.     From the inception of Plaintiff's employment, Defendant erroneously considered Plaintiff to be an "exempt" employee for purposes of the FLSA, the MWA, and/or the WPCL.

10.     In Plaintiff's role as Maintenance Manager, Defendant compensated Plaintiff on a salaried basis of $72,000.00 per annum.   When Defendant first hired him, Plaintiff worked approximately forty (40) hours per week.

11.     At all times relevant hereto, Plaintiff was regularly and routinely under the direct supervision and authority of Defendant's Regional Maintenance Manager.

12.     As part of his job duties, Plaintiff initially supervised two (2) employees of Defendant who served as technicians, conducting repairs and otherwise servicing transportation vehicles (hereinafter, the "Technician" or the "Technicians").

13.     Significantly, at the outset of his employment, Plaintiff spent approximately 30% to 40% of his 40-hour workweek working on the "floor" of the Facility and conducting manual labor akin to that performed by the Technicians.

14.     Shortly thereafter, beginning in December 2021 or early 2022, due to a notable turnover rate and an increased workload for Technicians, Plaintiff essentially assumed the primary or predominate role of working as a Technician, secondary to any administrative and/or executive job tasks that were associated with the position of Maintenance Manager.

15.     During this same timeframe, Plaintiff began working approximately forty-five (45) to fifty (50) hours a week.

16.     In April 2022, one of the Technicians immediately resigned without providing Defendant or Plaintiff with any advance notice.  Consequently, Plaintiff experienced an increased workload in terms of performing the manual labor of a Technician, in order to compensate for the employee's departure, while undergoing an decrease in the amount of administrative and/or executive work that he performed as the Maintenance Manager.

17.     Approximately one month later, in May 2022, another Technician resigned after providing Defendant with notice.  As such, Plaintiff again experienced an increased workload in terms of performing the manual labor of yet another Technician while undergoing another decrease in the amount of administrative and/or executive work that he performed as the Maintenance Manager.

18.     At this point, the number of hours that Plaintiff worked for Defendant also increased, and Plaintiff worked approximately fifty-five (55) to sixty-five (65) hours per week.

19.     In or around the end of May 2022, Defendant transferred two temporary Technicians to work with Plaintiff at the Facility from a different location.  Within two weeks,

4

Defendant transferred one of the Temporary Technicians back to his original location, and Plaintiff was forced to resume what was then amounting to a full-time job working as a Technician.

20.    In or around October 2022, Defendant transferred the sole remaining temporary Technician back to his original job location, and Plaintiff was without the assistance of any Technician to perform the manual labor necessary to repair and service transportation vehicles. As a result, Plaintiff effectively assumed the workload of two Technicians and, in so doing, an overwhelming supermajority, or approximately 70% or 80%, of Plaintiff's job duties consisted of doing the manual labor work of Technicians.

21.    In or around October of 2022, Plaintiff submitted a complaint to Defendant's management concerning whether he was properly classified as an "exempt" employee for purposes of the FLSA, the MWA, and/or the WPCL and, therefore, was eligible for an overtime rate of pay for hours he worked over 40 within one workweek.

22.    On or about January 6, 2023 – two weeks subsequent to the above-mentioned Complaint – Defendant terminated Plaintiff's employment for unspecified reasons.

23.    At all times relevant hereto, Defendant should have classified Plaintiff as a "non-exempt" employee for purposes of the FLSA, the MWA, and/or the WPCL.

24.    At all times pertinent hereto, Defendant was obligated to compensate Plaintiff at the overtime rate of pay.  However, Defendant failed to pay Plaintiff at the overtime time of pay for hours that he worked in excess of forty (40).

## COUNT I
## FAILURE TO PAY OVERTIME WAGES IN
## VIOLATION OF THE FLSA
## 29 U.S.C. § 201, *et seq.*

25.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

26.     Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207.  Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 hours within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

27.     The FLSA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

28.     In interpreting this broad phrase, the United States Court of Appeals for the Third Circuit has concluded that liability for violations of the FLSA clearly attaches to the corporate entity itself and, additionally, the corporate officers of the corporate entity.  See *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

29.     Somewhat relatedly, the FLSA defines "employ" to mean "to suffer or permit to work."  29 U.S.C. § 203(g).

30.     On December 10, 2021, Defendant extended a position-for-hire to Plaintiff with specified duties, start-times, and pay-rates, particularly as the Maintenance Manager.  Shortly thereafter, Defendant instructed Plaintiff to perform, and Plaintiff undertook, the primary and independent job duty of performing the manual labor work of Technician(s).

31.     When Plaintiff performed his job duties as a Maintenance Manager and/or as a Technician, Defendant possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain enumerated tasks for the financial benefit of Defendant.  At all times relevant hereto, Defendant exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

6

32.     At all times pertinent hereto, Defendant also controlled the general terms and conditions of Plaintiff's workplace duties in performing job duties as a Maintenance Manager and/or job duties that were typically associated with the position of Technician.  Further, and regardless of the capacity or role in which Plaintiff was then working, Defendant dictated the compensation structure and scheme of his pay and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

33.     As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendant "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).  Stated otherwise, in his role as Maintenance Manager and also when performing the substantive job duties of a Technician, Plaintiff acted directly or indirectly in furtherance of Defendant's business interest.

34.     As such, Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

35.     Moreover, pursuant to 29 U.S.C. § 203(s)(1), the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce" and (2) have an annual gross volume of sales not less than $500,000.00.  *Id.*

36.     Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

37.     In elaborating on the term "commerce," the Third Circuit concluded in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to establish that the employer was an "enterprise engaged in commerce" under the FLSA.

38.    Upon information and belief, Defendant purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within Pennsylvania.

39.    Additionally, as part of its routine business practice, Defendant transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and through interstate mail via the United States Postal System.

40.    Therefore, Defendant regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

41.    Upon information and belief, Defendant provides the above-mentioned transportation services in various counties in the Commonwealth of Pennsylvania, and given the nature, size, scope, and industry of its business, and the frequency of the services sales that it has effectuated throughout Pennsylvania, Defendant had an annual dollar volume of sales in excess of $500,000.00.

42.    Therefore, Defendant satisfies the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

43.    Accordingly, Defendant is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

44.    Furthermore, the FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts, such as individuals employed by the United States Government or the United States Postal Service.  29 U.S.C. § 203(e)(1).

45.     To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner. *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015), citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

46.     In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293, quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985).

47.     "Not only should courts examine the circumstances of the whole activity, they should [also] consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." *Id.* (internal citation and quotation marks omitted).

48.     At all times relevant hereto, Defendant possessed and, in fact, exercised its right to control Plaintiff's job duties, namely with respect to their decisions and directives concerning where, how, and when Plaintiff was to provide services as the Maintenance Manager and/or when performing the job duties of a Technician.

49.     Defendant also exerted significant control over the manner in which Plaintiff performed his workplace tasks the Maintenance Manager and/or when performing the job duties of a Technician.  In working in either or both capacities, Defendant delineated the methodologies involved in the completion of Plaintiff's duties, denoted his expected rate of productivity, dictated

the speed in which Plaintiff was to complete his tasks, and designated and prioritized which specific job duties Plaintiff was to perform.

50.    Plaintiff had no personal financial investment in Defendant's operations. Nor did Plaintiff have an opportunity to obtain extra renumeration based on the exercise of managerial skill.

51.    Further, Plaintiff did not utilize his own equipment while working for Defendant, and Defendant supplied Plaintiff with all the supplies and equipment necessary for him to perform his job as the Maintenance Manager and *de facto* job as a Technician.

52.    In performing his job duties, regardless of which job capacity or both job capacities, Plaintiff did not utilize any "special skill" akin to that of a licensed professional.

53.    Nonetheless, the workplace duties to which Plaintiff completed were an integral component of Defendant's day-to-day operations, which primarily consisted of providing transportation services to the public.

54.    Finally, Plaintiff was completely dependent on Defendant to perform any and all of his job duties because Defendant had the clientele, regulatory licensure, and wherewithal necessary to bestow Plaintiff with work.

55.    Plaintiff is thus an "employee" for purposes of the FLSA, regardless whether he was working as the Maintenance Manager and/or when performing the job duties of a Technician(s).

56.    Ultimately, given the status of Defendant as an "employer" that is an "enterprise engaged in commerce," and Plaintiff's status as an "employee," Defendant was obligated to comply with the overtime rate of pay requirements of the FLSA.

57.     That is, at all times hereto, Defendant was mandated to pay Plaintiff one hundred fifty percent of his corresponding base rate of pay for any time worked beyond 40 hours in a seven-day period (hereinafter, "Overtime Pay").  29 U.S.C. § 207(a)(1).

58.     As previously averred in this Complaint, from January 2022 or shortly thereafter to January 6, 2023, Plaintiff worked predominately as a Technician, when compared to his role and duties as the Maintenance Manager.

59.     In or around the same timeframe mentioned directly above, Plaintiff began working 45 hours a week and, later, up to and including 55 hours a week.

60.     During the above-mentioned timeframe, and throughout that entire timeframe, Plaintiff performed the manual labor job duties of a Technician consistently and regularly, on a daily, weekly, and monthly basis continuously or for prolonged periods and/or intervals of time.

61.     Thus, assuming, *arguendo*, that Defendant, on an initial basis, properly classified Plaintiff as an "exempt" employee in his role as the Maintenance Manager, Plaintiff lost such status when he assumed performance of a Technician's job duties.  See 29 C.F.R. §551.211(e); 29 C.F.R. §541.700.  Consequently, Defendant was legally obligated to pay Plaintiff Overtime Pay for approximately five (5) to fifteen (15) hours of work, above and beyond 40 hours, depending on the particular workweek.

62.     However, during the above-mentioned workweeks and timeframes, Defendant explicitly refused to pay Plaintiff overtime pay for the overtime hours that he worked.

63.     Instead, as averred above, Defendant continued to pay Plaintiff on a salaried basis of $72,000.00 per annum, even though Plaintiff was originally hired to work a 40-hour week and subsequently undertook an additional five (5) to fifteen (15) hours a week working solely and exclusively as the functional equivalent of a Technician.

64.     Indeed, as explained in more detail above, Plaintiff was oftentimes the only employee of Defendant who was readily available and able to perform the job tasks of a Technician.

65.     On the whole and in comparison, Plaintiff's performance of the job duties bestowed upon a Technician was much more important to Defendant's business operations than the duties he conducted as the Maintenance Manager because the work of a Technician often entailed pressing or demanding issues with regard to transportation vehicles that needed to be addressed and resolved immediately or in a short timeframe.

66.     Upon information and belief, Defendant paid its administrative and/or executive officers who were similarly situated with Plaintiff a salary that was on par with, and substantially comparable to, Plaintiff's salary as the Maintenance Manager.  However, Defendant did not require the above-delineated officers to perform the job duties of a Technician.

67.     Further, upon information and belief, Defendant has effectuated a wage payment practice that compensated employees who worked forty (40) hours a week solely and purely performing the jobs of a Technician approximately $72,000.00 per annum or more.

68.     At all times pertinent hereto, the job duties that Plaintiff performed as the Maintenance Manager and the extra work that Plaintiff performed as a *de facto* Technician were completely divorced from one another, and there was no direct, correlative, or positive relationship between the set of job duties, which always remained separate and distinct.

69.     Consequently, when Plaintiff performed the job duties of a Technician, he effectively worked as a maintenance person and/or mechanic who followed the instructions and abided by the authority of Defendant's supervisory personnel and/or some other managerial-level employee of Defendant.

70.    Further, when Plaintiff performed the job duties of the Maintenance Manager, he was always under the direct supervisory authority and disciplinary power of the Regional Maintenance Manager.

71.    Notably, as a functional matter, in performing the job duties of a Maintenance Manager, Plaintiff did not manage Defendant or otherwise possess supervisory authority over Defendant itself, one of its departments, and/or two or more of its employees. To reiterate, Plaintiff usually and effectively worked by himself or with the assistance of one (1) Technician.

72.    Further, Plaintiff did not execute any office or peripheral tasks in conjunction with the management of Defendant's general business operations or possess the discretion to make any sort of judgment decision. Plaintiff also did not possess, exercise, or utilize a level of discretion with respect to a highly developed knowledge that was obtained in a field that necessitated and required extensive specialization, training, or instruction.

73.    Consequently, for all intents and purposes, Plaintiff was a non-exempt employee pursuant to the FLSA, the MWA, and/or the WPCL. See 29 C.F.R. §541.700; 43 P.S. § 333.105.

74.    Therefore, at all times relevant hereto, and as a matter of fact, Defendant should have classified Plaintiff as a "non-exempt" employee for purposes of the FLSA.

75.     However, Defendant refused to classify Plaintiff as a "non-exempt" employee. Instead, Defendant continued to pay Plaintiff on a salaried basis of $72,000.00 per year for working as the Maintenance Manager, even though Plaintiff primarily and predominately worked as a Technician.

76.    Therefore, Defendant violated 29 U.S.C. § 207(a)(1) in failing to pay Plaintiff overtime wages for each and every week that Plaintiff worked above and beyond forty (40) hours in a given workweek.

77.     Otherwise, 29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.

78.     An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991), citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942).

79.     Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

80.     Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

81.     The willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

82.     Defendant cannot meet the burden of establishing "good faith and reasonable grounds" for its violation of Plaintiff's rights under the FLSA. This is demonstrated by its willful animus in flagrantly disregarding its responsibilities and obligations as an employer and gross and readily apparent error in classifying Plaintiff's employment as exempt.

83.     Therefore, Defendant is liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

84.     To date, Defendant has not compensated Plaintiff the mandatory Overtime Pay for weeks in which Plaintiff worked above and beyond forty (40) hours.

85.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**FAILURE TO REMIT OVERTIME WAGES IN**
**VIOLATION OF THE MWA**
**43 P.S. § 333.101, *et seq.***

86.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

87.     The MWA, much like its federal law counterpart in the FLSA, mandates a heightened rate of pay for any hour worked in excess of 40 hours per work week.  See 43 P.S. § 333.104.

88.     Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary…." 43 P.S. § 333.104(c).

89.     Nearly identical to the pertinent provision of the FLSA, the MWA defines "employer" to include "any association, corporation, individual, partnership," or "any person or

15

group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).

90.    Analogous to the case law interpreting the FLSA, the definition of "employer" is construed expansively within the MWA to render a corporate entity, as well as its corporate officers, liable for violations of the FLSA.  See *Schneider v. IT Factor Prods.*, 2013 BL 341183, at *4 (E.D. Pa., filed Dec. 10, 2013), citing *Scholly v. JMK Plastering, Inc.*, 2008 BL 141013, at *4 (E.D. Pa., filed June 25, 2008).

91.    As previously averred, and for the same reasons Defendant is an "employer" for purposes of the FLSA, Defendant is also an "employer" for purposes of the MWA.

92.    In addition, Defendant is a corporate entity organized under the laws of the Commonwealth of Pennsylvania, by and through which individuals are employed for a commercial purpose and the financial benefit of Defendant, within the state of Pennsylvania.

93.    The MWA defines "employee" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

94.    In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

95.    In determining whether an individual is an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. Ct. 2003).

96.    As previously averred, and for the same reasons Plaintiff is an "employee" for purposes of the FLSA, Plaintiff is also an "employee" for purposes of the MWA.

97.    Consequently, given the status of Defendant as an "employer," and Plaintiff's status as an "employee," Defendant was obligated to comply with the overtime wage requirements of the MWA.

98.    However, as averred above, Defendant explicitly refused to pay Plaintiff any wages, much less Overtime Pay, for the overtime hours that he worked.

99.    As such, Defendant violated the MWA, namely 43 P.S. § 333.104(c).

100.    In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with Section 4(c) of the MWA.  43 P.S. § 333.113.

101.    Therefore, Defendant is liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses.

102.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**FAILURE TO REMIT WAGES IN**
**VIOLATION OF THE WPCL**
**43 P.S. § 260.1 *et seq*.**

103.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

104.    The WPCL provides an employee with a statutory remedy to enforce his rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee.  See *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

105.    The "contract" between the employer and the employee governs the determination of the specific wages earned by the employee.  *Id.*, citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986).

106.    As a matter of contract law, the mandates of the FLSA and/or the MWA were incorporated into the employment contract between Defendant and Plaintiff, and Defendant had the legal duty to provide Plaintiff with Overtime Pay for hours he worked above and beyond 40 a week.  See *DePaul v. Kauffman*, 272 A.2d 500, 506 (Pa. 1971).

107.    In the alternative, based on the amount of Plaintiff's salary as the Maintenance Manager, Defendant compensated Plaintiff approximately $36.00 per hour for a 40-hour workweek and assumed a contractual obligation to pay Plaintiff at the same rate for each and every hour that Plaintiff worked in excess of forty (40).

108.    The statutory remedy created by the WPCL established both a private cause of action to any employee to whom "any type of wages" are owed and bestowed "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

109.    The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."  43 P.S. § 260.2a.

110.    Defendant is a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

111.    As averred repeatedly throughout this Complaint, Defendant and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an "employee." This factual reality remains true for purposes of the WPCL as well.

112.    The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements." 43 P.S. § 260.2a.

113.    Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Defendant in exchange for compensation in the form of an hourly rate commensurate with the time Plaintiff expended in performance of said duties.

114.    Alternatively, Plaintiff has accrued "wages" pursuant to 43 P.S. § 260.2a, because Defendant was statutorily obligated, whether it be under the FLSA, the MWA, or both, to provide Plaintiff with Overtime Pay for any and all hours that he worked in addition to forty (40) hours in a given workweek.

115.    Further, per their employment contract, Defendant agreed to compensate Plaintiff for each and every day that he worked for Defendant, including his final day of employment, January 6, 2023, and a quarterly bonus for the three-month period up to and including December 31, 2022.

116.    Defendant has not asserted a dispute over the wages due and owing to Plaintiff and has not provided written notice of conceded or disputed wages associated with Plaintiff pursuant to 43 P.S. § 260.6.

117.    The WPCL imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer. 43 P.S. § 260.3(a).

118.    Defendant's Established Payday Procedure was the disbursement of employee pay on a bi-weekly basis.

119.    Section 260.10 of the WPCL permits an award of liquidated damages equal to 25% of the underlying amount of wages that are due and owing to an employee when an employee fails to pay the wages that are due and owing within 30 days of the Established Payday Procedure and the employer does not lodge a good faith contest or dispute.  43 P.S. § 260.10.

120.    Accordingly, per the above statutory provisions, Defendant was legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for thirty (30) days beyond Defendant's Established Payday Procedure.

121.    By omission, Defendant has refused to pay Plaintiff all wages due and owing to him well beyond thirty (30) days of the date of the Established Payday Procedure.

122.    As previously stated, the wages that were, are, and continue to be owing are those that have resulted from Defendant's failure to compensate Plaintiff with Overtime Pay or, alternatively, $54.00 per hour, for each and every hour that Plaintiff worked in excess of forty (40) in a workweek.

123.    To date, Defendant has not paid Plaintiff the above-mentioned wages that are due and owing to Plaintiff.  As such, Defendant violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

124.    Additionally, Defendant has not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

125.    The actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

126.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

127.    Moreover, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees. 43 P.S. § 260.9a(f).

128.    As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendant's above-mentioned unlawful wage payment practices.

129.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>**COUNT IV**</u>
**BREACH OF CONTRACT IN VIOLATION OF**
**PENNSYLVANIA COMMON LAW**

130.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

131.    To establish an action sounding in breach of contract, a plaintiff must establish "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, L.P.*, 873 A.2d 710, 717 (Pa. Super. 2005), citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa. Super. 2002).

21

132.    In a bona fide contractual offer, Defendant extended Plaintiff the opportunity to exchange his time and efforts, within the context of gainful employment with Defendant, for, amongst other things, a salaried pay of $72,000.00 a year, which is equivalent to an approximate and designated rate of $36.00 per hour for a forty (40) hour workweek.

133.    Alternatively, as a matter of contract law, the mandates of the FLSA and/or the MWA were incorporated into the employment contract between Defendant and Plaintiff, and Defendant had the legal duty to provide Plaintiff with Overtime Pay for hours he worked above and beyond 40 a week.  See *DePaul*, 272 A.2d at 506.

134.    Plaintiff conveyed his acceptance of Defendant's offer(s), mentioned directly above, implicitly, by and through his course of conduct and/or, expressly, by way of a written instrument.  In particular, Plaintiff and Defendant reached a manifestation of assent when Plaintiff performed work for Defendant and/or when Plaintiff signed the employment contract (hereinafter, the "Employment Contract").

135.    Consequently, the Employment Contract was formed between Plaintiff and Defendant, whereby Defendant assumed the contractual obligation to pay Plaintiff $36.00 per hour worked or, alternatively, Overtime Pay for hours that Plaintiff worked in excess of forty (40) a workweek.

136.    However, as alleged in the Complaint hereinabove, Defendant, by omission failed to pay Plaintiff at the applicable standard hourly rate of $36.00 per hour or Overtime Pay.

137.    The actions described hereinabove were the direct and proximate cause that resulted in breaches of the employment contract, deprived Plaintiff of his entitlement to accrued pay, and resulted in lost wages.

138.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT V
## UNJUST ENRICHMENT IN VIOLATION OF
## PENNSYLVANIA COMMON LAW

139.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

140.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003), citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995).

141.    A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999), citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995).

142.    Plaintiff conferred a benefit to Defendant by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Defendant's business.

143.    Indeed, Plaintiff's performance of work hours to which he never received his agreed upon compensation rate, or the statutorily required overtime rate of pay, as detailed and described above, constitutes a benefit that was directly conferred to Defendant.

144.    Defendant retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

145.    By accepting Plaintiff's labor and services and failing to pay Plaintiff at the overtime rate of pay and/or his regular rate of pay, Defendant has been unduly enriched.

146.    As a matter of justice and fairness, it would be manifestly unjust and inequitable for Defendant to retain the benefit of the above-mentioned labor and service hours without paying Plaintiff due compensation.

147.    Defendant's actions described hereinabove were the direct and proximate cause of its unjust enrichment and the damages Defendant owes Plaintiff for retaining a benefit without paying for its value.

148.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT VI
## RETALIATORY TERMINATION ON THE BASIS
## OF PROTECTED ACTIVITY IN VIOLATION OF THE FLSA
### 29 U.S.C. § 201, *et seq.*

149.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

150.    Section 15(a)(3) of the FLSA states that it is a violation for *any* person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

151.    Employees are protected regardless of whether the complaint is made *orally* or in *writing*.  Complaints made to the Wage and Hour Division are protected, and most courts have ruled that internal complaints to an employer are also protected.

152.    Because Section 15(a)(3) prohibits "any person" from retaliating against "any employee," the protection applies to all employees of an employer even in those instances in which the employee's work and the employer are not covered by the FLSA.

153.    The FLSA's anti-retaliation provision can be found at 29 U.S.C. § 215(a)(3).  This provision prohibits employers from: discharge[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or has served or is about to serve on an industry committee.

154.    Based on the above facts, Plaintiff submitted a complaint to Defendant's management concerning whether he was properly classified as an "exempt" employee for purposes

of the FLSA, the MWA, and/or the WPCL and, therefore, was eligible for an overtime rate of pay for hours he worked over 40 within one workweek.

155.    Approximately two weeks later, on or about January 6, 2023, Defendant terminated Plaintiff's employment.

156.    Given the close temporal proximity from the time when Plaintiff submitted a complaint to Defendant concerning the above-mentioned to the time Defendant terminated Plaintiff, it is necessarily inferable that Defendant terminated Plaintiff on the basis of his complaint.

157.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

For the above-stated reasons, Plaintiff, Lester Adams, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendant, National Express Transit Corporation, doing business as Mathews Bus Company, and prays for relief as follows:

1.  Declare and find that Defendant committed one or more of the following acts:

    i.    Violated provisions of the FLSA by failing to pay Plaintiff overtime wages and did so willfully;

      ii.      Violated provision of the MWA in failing to pay Plaintiff overtime wages and did so willfully;

      iii.      Violated provisions of the WPCL in failing to remit wages to Plaintiff and did so willfully;

      iv.      Breached its employment contract with Plaintiff in failing to compensate Plaintiff in accordance with the terms of the contract and/or statutory law that was incorporated into the contract;

      v.      Was unjustly enriched at Plaintiff's expense and unlawfully retained a benefit without paying for its value; and

      vi.      Violated provisions of the FLSA by retaliatorily termination Plaintiff and did so willfully;

2.   Award unpaid overtime wages and unpaid wages at Plaintiff's contractual hourly rate and other compensation denied or lost to Plaintiff to date by reason of the unlawful acts described in this Complaint;

3.   Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum and overtime wages pursuant to the FLSA, MWA, and/or the WPCL;

4.   Award contractual damages as a result of Defendant's breach of contract;

5.   Award pre-judgment and post-judgment interest where accorded by law;

6.   Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

7.   Award injunctive and other equitable relief as provided by law;

8.   Grant leave to amend to add claims under state and federal laws; and

9.   Award such other and further relief as this Court deems just, equitable, and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: November 21, 2023                By: _____
                                                                Erik M. Yurkovich, Esq. (Pa. I.D. No. 83432)

                                                                The Workers' Rights Law Group, LLP
                                                                Foster Plaza 10
                                                                680 Andersen Drive, Suite 230
                                                                Pittsburgh, PA 15220
                                                                Telephone: 412.910.8057
                                                                Fax: 412.910.7510
                                                                erik@workersrightslawgroup.com

                                                                *Counsel for Plaintiff, Lester Adams*

## **VERIFICATION**

I, Lester Adams, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: 11 / 20 / 2023

_____
Lester Adams